UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.:

SECURITIES AND EXCHANGE COMMISSION,   )
                                                                                        )
                              Plaintiff,                                       )
                                                                                        )
v.                                                                                    )
                                                                                        )
DALE TENHULZEN, and                                               )
LIVE WEALTHY INSTITUTE, LLC,                          )
                                                                                        )
                              Defendants.                              )
_____  )

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## INTRODUCTION

1. From approximately April 2015 through September 2019, the Defendants in this action acted as unregistered brokers on behalf of several real estate investment funds managed by EquiAlt, LLC ("EquiAlt"). The Defendants raised approximately $15 million from the offer and sale of unregistered securities to more than 60 retail investors located in several states. The Defendants earned approximately $1.5 million in transaction-based sales commissions.

2. Unbeknownst to these investors, EquiAlt was actually operating a massive Ponzi scheme during which it raised more than $170 million from approximately 1,100 investors in more than 35 states.

3. At all relevant times, the Defendants were not registered as broker-dealers with the Commission or associated with a registered broker-dealer. EquiAlt's securities offerings were not registered with the Commission and there was no applicable exemption from registration for these offerings.

4. By engaging in this conduct the Defendants each violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), [15 U.S.C. §§ 77e(a) and 77e(c)], and Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), [15 U.S.C. § 78o(a)(1)]. Unless enjoined, the Defendants are reasonably likely to continue to violate the federal securities laws. The Commission also seeks against all Defendants disgorgement of ill-gotten gains along with prejudgment interest thereon, and civil money penalties.

## DEFENDANTS

5. **Dale Tenhulzen**, 61, is a resident of Park County, Wyoming and the owner of Live Wealthy Institute LLC ("Live Wealthy Institute"). Tenhulzen is not currently registered with the Commission or the Financial Industry Regulatory Authority ("FINRA"), nor was he during the time period relevant to the allegations contained herein. From approximately April 2015 to September 2019, Tenhulzen personally solicited and sold unregistered securities in the following real estate investment funds managed by EquiAlt: EquiAlt Fund, LLC, and EquiAlt Fund II, LLC (collectively the "EquiAlt Funds").

6. **Live Wealthy Institute** is a Wyoming limited liability company with offices in Huntington Beach, California, solely owned and controlled by Tenhulzen,

engaged in the business of selling the unregistered securities of the EquiAlt Funds to retail investors. Live Wealthy Institute has never been registered with the Commission, FINRA or any state securities regulatory authority.

## JURISDICTION

7. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)]; and Sections 21(d), 21(e) and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa(a)].

8. This Court has personal jurisdiction over the Defendants and venue is proper in the Middle District of Florida because Defendants transacted business in this District relating to the sale of the EquiAlt Funds' securities.

9. In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

## FACTUAL ALLEGATIONS

10. Beginning in 2016 through at least February 11, 2020 (when the Commission filed an emergency action against EquiAlt and others), EquiAlt orchestrated a massive Ponzi scheme relating to the EquiAlt Funds. The scheme involved at least 1,100 investors who invested approximately $170 million in the EquiAlt Funds. The Defendants in this action raised approximately $15 million for the EquiAlt Funds.

    A.    The EquiAlt Ponzi Scheme and Other Fraudulent Conduct

11. At all relevant times, Brian Davison and Barry Rybicki controlled EquiAlt, whose primary business purpose was the management of the EquiAlt Funds. Davison and Rybicki promised investors that the EquiAlt Funds would use their money to purchase real estate in distressed markets throughout the United States and that these real estate investments would generate revenues sufficient to pay investors interest rates of 8% to 10% per annum. The EquiAlt Funds, however, were unprofitable almost from inception.

12. Without sufficient revenues to pay the money owed to investors, EquiAlt soon resorted to fraud, using new investor money to pay the interest promised to existing investors. EquiAlt perpetuated this fraud for several years until the Commission filed its emergency action in February 2020 when the Court entered a temporary restraining order, an asset freeze, and appointed a receiver over the EquiAlt Funds.

13. In addition to operating a Ponzi scheme, Davison and Rybicki misappropriated and misused millions of dollars of investor money. In furtherance of this fraudulent scheme, EquiAlt, Rybicki, and Davison also made numerous material misrepresentations and omissions to investors in connection with the offer and sale of investments in the EquiAlt Funds.

### B. EquiAlt Funds' Securities and Misrepresentations to Investors

14. EquiAlt, through a network of unregistered sale agents including the Defendants in this action, sold investors 3-year or 4-year term debentures issued by the EquiAlt Funds providing a fixed annual return of 8% to 10%. Many of the investors were elderly, retired, and used their IRAs to invest in the EquiAlt Funds. Moreover, many of the investors were unaccredited or unsophisticated in that they lacked knowledge or

expertise in financial or business matters, were not capable of evaluating the merits or risks of the investment, and were not otherwise capable of bearing the economic risks of the investment. Many of the investors in this Ponzi scheme were attracted to investments in the EquiAlt Funds by representations that the investments were secure, safe, low risk, and conservative.

15. In addition to the misrepresentations about the safety and security of investing in the EquiAlt Funds, EquiAlt made numerous other misrepresentations and omissions concerning the use of investor proceeds, registration with the Commission, compliance with applicable laws, and management of the EquiAlt Funds. In particular, EquiAlt misrepresented, or failed to disclose adequately to investors, that their investment proceeds were being used to pay substantial commissions to unregistered sales agents. Moreover, investors were told that 90% of their funds would be used to invest "in property." Yet, less than 50% of investor funds were actually used for that purpose. In fact, most of the remaining funds were used for improper purposes such as the payment of millions of dollars in undisclosed fees and bonuses to EquiAlt, Davison and Rybicki.

### C. Defendants Offered and Sold EquiAlt Securities

16. Over a period of several years, EquiAlt recruited a network of unregistered sales agents throughout the United States to sell securities in the EquiAlt Funds. EquiAlt paid these unregistered sales agents including the Defendants commissions ranging from 6-12% of the amount invested in the EquiAlt Funds.

17. The Defendants had a long time business relationship with EquiAlt during which they regularly participated in numerous sales of EquiAlt Funds' securities. In fact,

the Defendants were first introduced to EquiAlt in 2013 by another unregistered sales agent based in Arizona who was also promoting investments in the EquiAlt Funds. After meeting Davison and Rybicki, Tenhulzen entered a marketing agreement with EquiAlt, which provided that Tenhulzen would receive commissions of 10% of the invested amount for selling EquiAlt Funds' securities. Soon thereafter, Tenhulzen began soliciting investors for the EquiAlt Funds through referrals and investment seminars conducted by the Live Wealthy Institute. Rybicki, EquiAlt's Managing Director, attended some of these investment seminars and made recommendations to Tenhulzen about how to market investments in the EquiAlt Funds.

18. At all relevant times, the Defendants engaged in sales activity indicative of a broker dealer, including (1) communicating directly with investors by phone, by e-mail, or in person; (2) espousing the merits of the EquiAlt Funds' securities to these investors; (3) reassuring investors about the "risk" of the investment or about the EquiAlt business model; and (4) receiving transaction-based compensation.

19. More specifically, Tenhulzen engaged in substantive investment related discussions with EquiAlt on behalf of numerous prospective investors including negotiations concerning the terms of the investment such as the interest rate offered to investors and the length of the debentures. He also assisted with the sale of EquiAlt Funds' securities by sending private placement memoranda, subscription documents, and marketing materials to prospective investors. Tenhulzen routinely gave advice to investors concerning the suitability of investments in the EquiAlt Funds, recommending the debentures and describing them as similar to annuities. Tenhulzen was highly motivated

to recommend investments in the EquiAlt Funds because he was also paid a bonus for selling increasing amounts of EquiAlt Funds' securities, in addition to the 10% commissions he was receiving.

20. From January 2011 to November 2019, EquiAlt raised more than $170 million from investors though the sale of fixed rate debentures issued by the Funds. Of that total, Defendants raised approximately $15 million from the offer and sale of the EquiaAlt debentures to more than 60 retail investors located in several states. These debentures are securities within the meaning of Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act. Although the Defendants purportedly offered the EquiAlt Funds' securities under a Rule 506(b) exemption to registration, the offerings did not qualify as such because many of the investors were neither accredited nor sophisticated. Further, the Defendants, on behalf of the EquiAlt Funds, did not provide an audited balance sheet or financial statements to unaccredited investors.

21. During the time the Defendants sold the EquiAlt Funds' securities they held no securities licenses, were not registered with the Commission as broker-dealers, and were not associated with a registered broker-dealer. Further, the EquiAlt Funds' securities were not registered with the Commission and did not qualify for an exemption from registration. The Defendants were thus not permitted to sell the EquiAlt Funds' securities.

## CLAIMS FOR RELIEF

## COUNT I

### Violations of Sections 5(a) and 5(c) of the Securities Act

22. The Commission repeats and realleges paragraphs 1 through 21 of this Complaint as if fully set forth herein.

23. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities offered and sold by the Defendants as described in this Complaint and no exemption from registration existed with respect to these securities.

24. From approximately April 2015 and continuing through approximately September 2019, the Defendants directly and indirectly:

    (a) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

    (b) carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

    (c) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security;

without a registration statement having been filed or being in effect with the Commission as to such securities.

25. By reason of the foregoing the Defendants violated and, unless enjoined, are reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II

### Violations of Section 15(a)(1) of the Exchange Act

26. The Commission repeats and realleges Paragraphs 1 through 21 of this Complaint as if fully set forth herein.

27. From approximately April 2015 and continuing through approximately September 2019, the Defendants, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce effected transactions in, or induced or attempted to induce the purchase or sale of securities, while they were not registered with the Commission as a broker or dealer or when they were not associated with an entity registered with the Commission as a broker-dealer.

28. By reason of the foregoing, the Defendants, directly or indirectly, violated and, unless enjoined, are reasonably likely to continue to violate Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged, and:

### A.
### Permanent Injunctive Relief

Issue a Permanent Injunction enjoining the Defendants from violating Sections 5(a) and 5(c) of the Securities Act and Section 15(a)(1) of the Exchange Act.

### B.
### Disgorgement and Prejudgment Interest

Issue an Order directing the Defendants to disgorge on a joint and several basis all ill-gotten gains or proceeds received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest thereon.

## C.
## Civil Money Penalties

Issue an Order directing the Defendants to pay civil money penalties on a joint and several basis pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act.

## D.
## Further Relief

Grant such other and further relief as may be necessary and appropriate.

## E.
## Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated: August 13, 2020               Respectfully submitted,

                          By:   s/ Alise Johnson
                                Alise Johnson
                                Senior Trial Counsel
                                Fla. Bar No. 0003270
                                E-mail: johnsonali@sec.gov
                                Direct Telephone: (305) 982-6385
                                *Lead Attorney*

                                Attorney for **SECURITIES AND EXCHANGE COMMISSION**
                                801 Brickell Avenue, Suite 1950
                                Miami, Florida 33131
                                Telephone: (305) 982-6300
                                Facsimile: (703) 813-9526